RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
────────────────

IN RE: AARON K. HILL,

*Debtor*.

─────────────────────────────────────────

CMCO MORTGAGE, LLC,

*Plaintiff-Appellee*,

*v.*

AARON K. HILL,

*Defendant-Appellant*.

⎫
⎮
⎮
⎮
⎮
⎬   No. 19-5861
⎮
⎮
⎮
⎮
⎭

────────────────

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
3:16-cv-00246—Claria Horn Boom, District Judge.
Nos. 3:14-bk-33623; 3:15-ap-03001—Alan C. Stout, Judge;

Argued: March 12, 2020

Decided and Filed: May 4, 2020

Before: SUTTON, McKEAGUE, and DONALD, Circuit Judges.

────────────────

## COUNSEL

**ARGUED:** Christopher B. Madden, DENTONS BINGHAM GREENEBAUM LLP, Louisville, Kentucky, for Appellant. Elisabeth S. Gray, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellee. **ON BRIEF:** James R. Irving, BINGHAM GREENEBAUM DOLL LLP, Louisville, Kentucky, for Appellant. Elisabeth S. Gray, Katherine T. Reisz, Matthew P. Dearmond, MIDDLETON REUTLINGER, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

BERNICE BOUIE DONALD, Circuit Judge.   Aaron Hill, whether on his own accord or due to poor legal advice, decided not to attend a state court damages trial after being admonished by the state court judge that, if he failed to appear, "adverse things [were] likely [to] happen." The judge was right.   The court entered a final judgment against Hill in the amount of $3,417,477 and a finding that Hill's actions "caused a willful and malicious injury."   Hill now seeks relief from the bankruptcy court's holding that the debt is nondischargeable in his Chapter 7 bankruptcy proceeding because he is collaterally estopped from contending that the debt was not the result of "willful and malicious injury."   The bankruptcy court was correct to find that the state court damages judgment provides preclusive effect to the determination of the nondischargeability of Hill's debt.   We **AFFIRM**.

I.

Prior to November 2010, Aaron Hill was a principal of First Meridian Mortgage Corporation ("First Meridian").   That month, he and the other three First Meridian principals agreed to sell the company to CMCO Mortgage, LLC ("CMCO"), an Ohio based mortgage company.   According to Hill, the parties agreed that after the sale the former First Meridian principals would build and manage an internet division of CMCO.   The sale was consummated as a stock purchase agreement and also involved the execution of two promissory notes evidencing loans to First Meridian.

On January 15, 2012, Hill received an offer of employment from CMCO's competitor, Peoples Bank, which he accepted.   On February 17, 2012, CMCO terminated Hill, alleging that he breached his contract, provided trade secrets to Peoples Bank, and unlawfully recruited and hired nearly all CMCO's Louisville, Kentucky, and Indianapolis, Indiana, employees over to Peoples Bank.   Hill contends that he discussed the possibility of joining Peoples Bank with CMCO as early as December 2011 and was informed that he should "do what's best for [himself] and [his] family."   On February 27, 2012, CMCO filed a complaint in Jefferson County

Circuit Court (the "state court") against Peoples Bank, Hill, and other former employees of CMCO. Eight of the claims named Hill as a defendant: (1) breach of contract; (2) breach of fiduciary duty; (3) interference with actual or prospective business advantage; (4) unfair competition; (5) usurpation of corporate business opportunities; (6) trade secret misappropriation; (7) conversion; and (8) unjust enrichment.

At the start of the state court action, Peoples Bank paid for Hill and other employees' legal representation, but following a July 2013 mediation, wherein CMCO settled all of its claims against Peoples Bank and most of the other defendants, Peoples Bank informed Hill that it could no longer fund his representation. After a brief period wherein Hill's previous attorney represented him *gratis*, the attorney withdrew, and Hill proceeded pro se. Hill, however, generally declined to participate in the action. Most importantly, Hill failed to attend the pretrial conference on August 19, 2014, resulting in the state court granting CMCO's motions for sanctions and entry of a default judgment on the claims set forth in its complaint. Making matters worse, Hill also declined to appear for the damages trial that took place on September 22, 2014.

Hill asserts that he never received the state court's trial order scheduling a pretrial conference because many of the state court filings were mailed to the incorrect address.[1] He admits that he was initially aware of the pretrial conference through correspondence with opposing counsel in February 2014, but states that he was unaware that the August 19, 2014 date was finalized and that he was expecting a trial order to be sent to him from the state court. Hill further acknowledges that he knew of the trial date because he spoke with the state court judge on the phone and was warned that if he did not appear "adverse things [were] likely [to] happen." He contends, however, that a bankruptcy attorney he was consulting at the time advised him that he need not participate in the action because any judgments obtained against him would "go away" if he sought bankruptcy relief.

The state court entered judgment in favor of CMCO on "all claims asserted by and against Hill in [the state court] action based on Hill's repeated and intentional failures to comply

---

[1]Hill alleges that the filings were mailed to an address in Lawrence, Kansas; Hill lived in Louisville, Kentucky.

with the Court's Second Civil Jury Trial Order dated February 11, 2014, and his failure to appear at the final pretrial conference."  As part of its findings of fact, the court stated that

> Hill's actions . . . were willful, intentional, in bad faith, egregious, and done with malice.  Hill's actions caused a willful and malicious injury to [CMCO].  Hill's actions further constitute fraud and defalcation while acting in a fiduciary capacity given his intentional misrepresentations made to conceal his wrongful actions from [CMCO], and his failure to meet his fiduciary obligations to [CMCO].  Hill intended the consequences of his actions, namely the destruction of [CMCO's] internet division.  Hill's actions were done in reckless disregard of [CMCO's] economic interests and expectancies.

State Court Judgment, Bankr. R.1-7, Page 6/8.  The court held a damages trial on September 22, 2014, and on October 3, 2014, entered a final judgment against Hill in the amount of $3,417,477 in compensatory damages.

On September 29, 2014, seven days after the trial and four days before the state court entered its final judgment in favor of CMCO, Hill filed his Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky.  Hill notified CMCO of his bankruptcy case the next day.  On October 29, 2014, CMCO filed a timely proof of claim for the $3,147,477 judgment against Hill in the bankruptcy court.  On June 8, 2015, the bankruptcy court entered an order annulling the automatic stay pursuant to 11 U.S.C. § 362(d)—lifting the injunction which prevents creditors from collecting debts from a debtor who has declared bankruptcy—with respect to CMCO's damages judgment against Hill.  On January 5, 2015, CMCO filed an adversary proceeding against Hill (now represented by counsel), seeking a determination that the debt owed by Hill to CMCO is nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6) (excepting discharge of debts obtained through fraud, fraud committed in a fiduciary capacity, and conduct for willful and malicious injury) and a denial of Hill's Chapter 7 discharge pursuant to 11 U.S.C. § 727 (a)(4)(A) (denying discharge to a debtor who knowingly and fraudulently made a false oath or account in their bankruptcy case).

Finally, on July 21, 2015, CMCO filed the motion now before this Court, seeking summary judgment only on its claim of nondischargeability under § 523(a)(6) (excepting discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity").  On November 2, 2015, the bankruptcy court entered its order granting

CMCO's motion for summary judgment and holding the damages judgment nondischargeable by application of collateral estoppel based on the state court judgment finding Hill's actions caused "willful and malicious injury." *In re Hill*, 540 B.R. 331, 342 (W.D. Ky. 2015). Hill filed a motion to vacate the order, arguing that the state court's default judgment could not be given preclusive effect, but on April 20, 2016, the bankruptcy court denied the motion.

While the bankruptcy case was pending, Hill filed an unsuccessful motion to vacate the damages judgment in the state court. Hill appealed the denial to the Kentucky Court of Appeals, but on January 12, 2018, the appellate court affirmed the lower court's denial, finding his appeal to be "nothing more than a frivolous attempt to circumvent Hill's utter failure to participate in the underlying litigation."[2] *Hill v. CMCO Mortg., LLC*, No. 2016-CA-000400-MR, 2018 Ky. App. Unpub. LEXIS 21, at *13-14 (Ky. App. Jan. 12, 2018). The appellate court also granted CMCO's motion for sanctions, finding Hill's appeal "so totally lacking in merit that it appears to have been taken in bad faith." Ky. App. Order, R. 28-1, PageID 234. Hill sought further review before the Kentucky Supreme Court, but the court denied his motion for discretionary review. *Hill v. CMCO Mortg., LLC*, N. 2018-SC-000068-D, 2018 Ky. LEXIS 237, at *1 (Ky. June 6, 2018).

On April 28, 2016, Hill timely appealed the grant of summary judgment to CMCO to the district court. On July 3, 2019, the district court entered its order denying Hill's appeal and affirming the bankruptcy court's grant of summary judgment to CMCO through the application of collateral estoppel. On August 1, 2019, Hill appealed the district court's denial of his appeal and affirmance of the bankruptcy court's grant of summary judgment to this Court.

II.

Under the Bankruptcy Code, the filing of a petition creates an automatic stay as to most proceedings against the debtor. 11 U.S.C. § 362(a). This provision was enacted to protect the "class of 'honest but unfortunate debtor[s].'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 374 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). However, "[o]n request of

---

[2]Hill did not appeal either the default judgment or the order awarding damages directly to the Kentucky Court of Appeals.

the party in interest and after notice and a hearing, the court shall grant relief from the stay[,] . . . such as by . . . annulling . . . such stay [] for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"  11 U.S.C. § 362(d)(1).

Hill claims that the bankruptcy court lacked the requisite grounds to annul the automatic stay with respect to the state court damages judgment.  Whether the bankruptcy court erred in lifting the automatic stay, however, is not a question before us.  Hill failed to challenge the bankruptcy court's order annulling the automatic stay in the district court or list it in his notice of appeal to the district court.  Furthermore, Hill failed to appeal the bankruptcy court's order annulling the automatic stay to this Court.  Hill appealed only the bankruptcy court's order granting summary judgment to CMCO and the order denying his motion to vacate that order. Therefore, the extent of his appeal is limited to the bankruptcy court's grant of summary judgment.  *See Bonner v. Perry*, 564 F.3d 424, 429 (6th Cir. 2009) ("[A] court of appeals has jurisdiction only over the areas of a judgment specified in the notice of appeal as being appealed.") (quoting *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 550 F.3d 529, 532 (6th Cir. 2008)); *Pletten v. MSPB*, Nos. 88-1467, 89-1086, 1990 U.S. App. LEXIS 11900, at *10 (6th Cir. July 13, 1990) ("[W]here a party intentionally appealed only a portion of the judgment in that the notice of appeal was expressly limited as to the orders . . . appealed from, the court may not read into the notice that which is not there.") (citing *Averitt v. Southland Motor Inn*, 720 F.2d 1178, 1181 (10th Cir. 1983)); *see also* Fed. R. App. P. 3(c)(1)(B).

III.

"On appeal from a district court's judgment affirming an order of the bankruptcy court, this Court reviews the bankruptcy court's order directly, and gives no deference to the district court's decision."  *McMillan v. LTV Steel, Inc.*, 555 F.3d 218, 225 (6th Cir. 2009).  We review the bankruptcy court's grant of summary judgment de novo.  *In re Wells*, 561 F.3d 633, 634 (6th Cir. 2009).  "Granting summary judgment is appropriate 'where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial[.]'"  *Meade v. Pension Appeals & Review Comm.*, 966 F.2d 190, 192-93

(6th Cir. 1992) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987)); *see* Fed. R. Civ. P. 56(a).

Collateral estoppel prevents the relitigation of an ultimate fact that was determined by a valid and final judgment in a prior action. *Dowling v. United States*, 493 U.S. 342, 347 (1990). Here, the bankruptcy court held that collateral estoppel required it to give preclusive effect to the state court's determination that Hill's debt to CMCO was the result of "willful and malicious injury" such that Hill is precluded from arguing that his debt to CMCO is dischargeable in his Chapter 7 bankruptcy.

Hill contends that the bankruptcy court erred by raising the application of collateral estoppel sua sponte. But this contention is contrary to our precedent and that of other federal courts. *See Hutcherson v. Lauderdale Cty., Tenn.*, 326 F.3d 747, 756-57 (6th Cir. 2003) (collecting cases where courts considered collateral estoppel sua sponte) ("[W]e have not failed to exercise our discretion to reach an issue that the parties have not briefed where it involves a pure question of law that cries out for resolution." (quotations omitted)).

Hill also asserts that the state court judgment included extraneous damages against him and was a violation of due process because he was denied the opportunity to be heard, such that the judgment was not entitled to the full faith and credit necessary to extend it preclusive effect. "[S]tate proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." *Kremer v. Chem Constr. Corp.*, 456 U.S. 461, 481 (1982). The Kentucky courts found that Hill had his opportunity to litigate the claims against him but instead chose not to appear. After unsuccessfully attempting to vacate the state court's damages judgment, Hill appealed to the state appellate court which held that "Hill willingly chose to abandon his defense, even after he was admonished by the trial court of the dangers associated of doing so, and subsequently chose not to pursue [a direct] appeal of the trial court's orders." *Hill*, 2018 Ky. App. Unpub. LEXIS 21, at *14. The state court's judgment against Hill clearly satisfied the minimum procedural requirements to establish full faith and credit in its judgment.

"[F]ederal court[s] must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984); *Ingram v. City of Columbus*, 185 F.3d 579, 593 (6th Cir. 1999). This requirement applies equally in the context of extending a state court judgment's determination of elements to a question of dischargeability before a bankruptcy court. *Grogan v. Garner*, 498 U.S. 279, 284 (1991); *In re Berge*, 953 F.3d 907, 916-17 (6th Cir. 2020); *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir. 1981) ("If a state court should determine factual issues using standards identical to those in dischargeability proceedings, then collateral estoppel—if held to be applicable and in the absence of countervailing statutory policy—would bar relitigation of those issues in the bankruptcy court.").

Therefore, we must look to Kentucky law to determine what preclusive effect Kentucky courts would give to the damages judgment. *See Migra*, 465 U.S. at 81. Under Kentucky law, collateral estoppel, or issue preclusion, requires four elements: "(1) the issue in the second case must be the same as the issue in the first case. In addition, the issue must have been (2) actually litigated, (3) actually decided, and (4) necessary to the court's judgment." *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 374 (Ky. 2010) (quotations omitted).

## A. Identity of Issues

The issues in this action and the state court action are identical. The state court found Hill liable as to eight separate claims stemming from his involvement with Peoples Bank while working for CMCO. As part of its findings of fact supporting that judgment, the state court determined that "Hill's actions . . . were willful, intentional, in bad faith, egregious, and done with malice[, and that he] caused a willful and malicious injury to [CMCO]." State Court Judgment, Bankr. R.1-7, Page 6/8. The same finding that Hill's conduct caused willful and malicious injury is the essential element of determining whether his debt to CMCO is dischargeable in the instant bankruptcy proceeding. Section 523(a)(6) of the Bankruptcy Code

excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."**3**

## B. Actually Litigated

The determination that Hill's conduct caused willful and malicious injury was actually litigated in the state court. Under Kentucky law, default judgments are considered "actually litigated" such that they can be given preclusive effect. *See Davis v. Tuggle's Adm'r*, 178 S.W.2d 979, 981 (Ky. 1944) ("The fact that no defense was offered in the suit . . . cannot make any difference, for the rule as to the conclusiveness of judgments applies to a judgment by default . . . ."); *see also Hill v. Petrotech Res. Corp.*, 325 S.W.3d 302, 309-10 (Ky. 2010) (reaffirming the rule previously established in *Davis*).

Hill disagrees, citing a Kentucky appellate case, *Five Star Lodging, Inc. v. George Const., LLC*, decided long after *Davis* and mere months before *Petrotech*. 344 S.W.3d 119 (Ky. Ct. App. 2010). There, the Kentucky appellate court stated that "a default judgment is not a judgment on the merits." *Id.* at 125 (citing *Buis v. Elliott*, 142 S.W.3d 137, 139-40 (Ky. 2004)).

There are several reasons to give more credence to *Davis* and *Petrotech* than *Five Star Lodging*. First, we find no case law disputing *Davis*, which was favorably cited by the Kentucky Supreme Court just last year. *See Lawrence v. Bingham Greenebaum Doll, L.L.P.*, No. 2018-SC-000344-TG, 2019 Ky. LEXIS 357, at *16-17 (Ky. Aug. 29, 2019) (holding that a default judgment constituted a judgment "on the merits" for purposes of claim preclusion). Second, *Petrotech* was decided after *Five Star Lodging* and by a higher Kentucky court. Third, the portion of *Five Star Lodging* that Hill cites was merely dictum because res judicata was plainly inapplicable to the facts of the case.**4** Finally, the Kentucky Supreme Court case cited by *Five*

---

**3**Hill contends that the damages judgment did not adjudicate the same issues of willful and malicious intent as under § 523(a)(6), but his real argument is tied to the final element of collateral estoppel—whether that finding was necessary to the state court's damages judgment. He admits as much in the "identity of issues" portion of his brief: "Even if Hill were deemed to have admitted such allegations by the Default Judgment, any such admission or finding was *not necessary to* the Damages Judgement as the State Court did not award punitive damages." Appellant's Br. at 44 (emphasis added).

**4**Res judicata could not be applied in *Five Star Lodging* to give preclusive effect to the order establishing damages because the grant of summary judgment preceded the damages judgment. 344 S.W.3d at 125.

*Star Lodging* as precedent, supporting its statement that a default judgment is not a judgment on the merits, does not support the principle espoused. *See Buis*, 142 S.W.3d at 139-41 (holding that a default judgment does not preclude the bringing of a permissive crossclaim, unraised in the prior action).

Although not entirely uniform, Kentucky's case law is clear enough that Kentucky courts will apply preclusive affect to default judgments such that they are considered "actually litigated" for the purposes of collateral estoppel.

## C.  Actually Decided

It is clear that the state court actually decided that Hills' conduct caused willful and malicious injury because it is clearly articulated in the damages judgment.  Hill does not challenge the existence of this element.

## D.  Necessary to the Judgment

Finally, the state court's finding that Hill's debt resulted from "willful and malicious injury" was necessary to the state court's damages judgment.  In order for the state court's finding to be necessary to its judgment and provide preclusive effect to the bankruptcy court's determination of nondischargeability, the same elements required for nondischargeability under the Bankruptcy Code must have also been required to enter judgment against Hill.  Generally, parties to a federal bankruptcy proceeding should not be bound by state proceedings determining facts in anticipation of bankruptcy.  "However, where the factual issues necessary for [a] dischargeability determination were also necessary to the state court determination, the parties would not have to anticipate the bankruptcy proceedings and the state courts would not be determining issues irrelevant to the state proceedings." *Spilman*, 656 F.2d at 228.

Section 523(a)(6) of the Bankruptcy Code provides that a Chapter 7 debtor cannot discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  "'The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'"  *In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999)

(quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)); *see also Berge*, 953 F.3d at 914-15. The word "malicious" further requires that the injury be "without just cause or excuse." *Berge*, 953 F.3d at 914 (quoting *In re Boland*, 946 F.3d 335, 338 (6th Cir. 2020)). Therefore, we must look to CMCO's pleadings to determine if the state court's finding that Hill deliberately or intentionally injured CMCO without just cause or excuse was a necessary element of any of CMCO's claims against Hill on which it received a default judgment.[5]

CMCO sought an order enjoining Hill from engaging in certain activities and providing it compensatory damages, punitive damages,[6] and costs and reasonable attorney's fees relating to the eight claims it raised against him.[7] CMCO's third claim[8] against Hill was for "interference with actual or prospective business advantage." States disagree whether "willful and malicious injury" as defined under § 523(a)(6) is an element of a claim for tortious interference with actual or prospective business advantage. *See In re Cardin*, No. 11-52077, 2013 Bankr. LEXIS 503, at *20-23 n.7 (Bankr. E.D. Tenn. Jan. 31, 2013) (collecting cases). Although Kentucky courts have yet to answer this question, we can infer that their answer is that "willful and malicious injury" is an element of a tortious interference claim.

Under Kentucky law, the elements of tortious interference with a prospective business advantage are: "(1) the existence of a valid business relationship or expectancy, (2) that the defendant was aware of this relationship or expectancy, (3) that the defendant intentionally interfered, (4) that the motive behind the interference was improper, (5) causation, and (6) special damages." *IB Agric., Inc. v. Monty's Plant Food Co.*, No. 3:12-CV-00271-CRS, 2014 U.S. Dist. LEXIS 136833, at *22-23 (W.D. Ky. Sept. 29, 2014) (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. App. 2012)). The tort requires that the defendant

---

[5]The state court's Findings of Fact relate to all claims. Therefore, a finding that "willful and malicious injury" was necessary to one claim accordingly means that the element was necessary to the state court's judgment.

[6]CMCO attempted to obtain punitive damages, inserting language as such in the Findings of Fact and Judgment, with a requested recovery of $17,087,385, but the state court scratched out that portion in its entry of judgment and only awarded CMCO compensatory damages.

[7]There were eleven claims in total (Claim X is listed twice), but several claims were brought solely against the other defendants.

[8]This claim was listed as Count VI in CMCO's complaint.

"show malice or some significantly wrongful conduct." *Nat'l Collegiate Athletic Ass'n By and Through Bellarmine Coll. v. Hornung*, 754 S.W.2d 855, 859 (Ky. 1988). Moreover, such cases "have turned almost entirely upon the defendant's motive or purpose, and the means by which he has sought to accomplish it . . . ." *Id.* (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on the Law of Torts §130 (5th ed. 1984)).

> The key question is whether the defendant has a valid reason for taking the challenged action; if the defendant had a legitimate reason for doing what he did, the simultaneous existence of an improper motive, such as spite or a desire to cause the plaintiff harm, will not generally result in the defendant's liability.

*Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 967 (6th Cir. 2007) (citing *Hornung*, 754 S.W.2d at 859).

Thus, to find Hill liable as to CMCO's tortious interference claim, it was necessary for the state court to determine that Hill's motive or reason for interfering with CMCO's business advantage was not only improper, but that he had no legitimate reason at all. The state court's finding that Hill caused "deliberate or intentional injury" to CMCO "without just cause or excuse" satisfied this element of the claim. Absent such a finding, it would not be possible for the state court to have entered judgment in CMCO's favor. Therefore, this finding, which matches the elements of § 523(a)(6), was necessary to the state court's judgment holding Hill liable to CMCO and precludes Hill from challenging the nondischargeability of his debt to CMCO.

IV.

For the foregoing reasons, we **AFFIRM**.